BRIAN SULLIVAN, Plaintiff-Appellant, v. THE CITY OF HILLSBORO, Defendant-Appellee.

Fifth District No. 5—98—0222

Opinion filed March 11, 1999.

Denis A. McGrady, Jr., of McGrady Law Office, of Gillespie, for appellant.

Kevin F. Blaine and Philip B. Alfeld, both of Coppinger, Carter, Schrempf & Blaine, Ltd., of Alton, for appellee.

JUSTICE MAAG delivered the opinion of the court:

Plaintiff, Brian Sullivan, was injured when his leg struck a submerged pipe while he was water-skiing on a lake that was owned and maintained by the City of Hillsboro. Plaintiff filed an action against the City of Hillsboro, alleging that the city had actual or constructive notice of a latent hazard on its property and failed to warn him and others who used the lake about this hazard. The trial court held that the city was immune from liability pursuant to provisions of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1—101 (West 1996)), and the court granted the city's motion for summary judgment.

The pertinent facts follow. On June 16, 1995, plaintiff, Brian Sullivan, and four friends went to Glenn Shoals Lake to boat and water-ski. Glenn Shoals Lake is a public lake in Montgomery County, Illinois. It is owned and maintained by the City of Hillsboro. Though plaintiff was an experienced water-skier, he had never visited or skied on Glenn Shoals Lake. Plaintiff had received permission to use a

friend's lot on the lake. Due to a mistake in directions, his group launched the boat from the adjacent lakefront lot. That lot was owned by the Boston family. The city permitted lot owners whose property fronted the lake to install and maintain boat docks in the lake. The city required owners to remove and store the docks during the winter. At the time of the incident, the Boston family had no dock. It had been set afloat by vandals a few years prior to the incident and was never replaced.

Plaintiff was the first person to ski. He made a "no-wet" start approximately 15 feet from shore. As the boat picked up speed, it began to pull plaintiff. About 30 feet from shore, plaintiff's leg struck a galvanized steel pipe that was submerged in the water. The pipe, which was about 1½ inches in diameter, was embedded in the bottom of the lake. The lake was four to five feet deep at this point. The top of the pipe was about six inches beneath the surface of the water. The top part of the pipe had been bent toward the shore as if it had been previously hit by another boat. No one in plaintiff's group saw the pipe prior to the incident.

The City of Hillsboro posted rules regulating public use of the lake. The rules were posted at the marina. The posted rules did not include any prohibition against water-skiing within 75 feet of the shoreline. There were no signs posted along the shore to inform the public that water-skiing was prohibited within 75 feet of the shoreline. The city did not place buoys or other markers in the lake to signify the 75-foot mark.

The City of Hillsboro admitted that it owned and maintained Glenn Shoals Lake. The lake was a public recreational facility. The city argued that because plaintiff was not an intended user of the property, it owed no duty under section 3—102 of the Act (745 ILCS 10/3—102(a) (West 1996)). In support, the city pointed to a subsection in its ordinances governing recreation at Glenn Shoals Lake. That subsection provides:

> "(E) No water skiing or surf board riding is permitted within seventy-five feet (75') of the shoreline or in the areas marked for the bathing beach and boat harbors. All areas for ingress or egress shall be those designated by the City and none other."

The trial court determined that plaintiff violated a provision of the ordinance by skiing in an area prohibited by the ordinance and that plaintiff was injured while skiing in that prohibited area. Based upon the finding that plaintiff violated the ordinance, the court concluded that he was not an intended user of the property and that the city had no duty to him under section 3—102 of the Act.

■ For liability to be imposed under section 3—102(a) of the Act, a

plaintiff must be not only a legally permitted user of the public property but also an intended user. 745 ILCS 10/3—102(a) (West 1996); *Sisk v. Williamson County*, 167 Ill. 2d 343, 657 N.E.2d 903 (1995). Intent must be inferred from the circumstances. The courts have looked to the property itself to determine the municipality's plan with regard to the use of the property. *Sisk*, 167 Ill. 2d 343, 657 N.E.2d 903. In order to determine whether the trial court's ruling was proper, we must first decide whether plaintiff's breach of the ordinance rendered him an unintended user of the city's property.

■ An ordinance, like any other legislation, must be interpreted in light of the evil to be protected against. If the harm suffered by the injured party bears no relation to the type of harm that the ordinance was enacted to prevent or to the class of people that the ordinance was intended to protect, then a breach of the ordinance cannot extinguish a legal duty or liability. *Fox v. Illinois Central R.R. Co.*, 308 Ill. App. 367, 31 N.E.2d 805 (1941); *Schwartz v. City of Chicago*, 63 Ill. App. 2d 416, 211 N.E.2d 477 (1965).

■ Here, the city presented no evidence regarding the purpose for which this provision was enacted. The provision in question prohibits water-skiing and surfing in areas near the shore where members of the public sunbathe, swim, float, dock, and launch their boats. It is reasonable to infer that the city intended to protect these users of the lake from potential hazards created by those who water-ski and surf. Examples of potential hazards might include skiers running over swimmers or children playing in the water, collisions with boats being moved from docks to the open waters, collisions with docked boats, and creating large waves that could result in damage to docks and docked boats. As we read it, this subsection was intended to prevent a risk of harm posed by skiers to other persons using the lake. Therefore, we conclude that plaintiff was not within the class for whose protection the ordinance was passed and, further, that the harm encountered by plaintiff (*i.e.*, contact with a submerged pipe) is not the type of harm that this provision was designed to protect against. See *Dini v. Naiditch*, 20 Ill. 2d 406, 170 N.E.2d 881 (1960); *Fox*, 308 Ill. App. 367, 31 N.E.2d 805.

By way of illustration, imagine a situation where a plaintiff, who is driving his pickup truck at night down a county roadway, loses control of his truck when his passenger-side tires hit a large crater at the edge of the pavement. Assume the truck has a broken taillight and that the plaintiff had not renewed his license plate tags. Assume further that the county road crew who created that crater, during road repairs, took no steps to block off this area to motorists and to post adequate warnings of the dangerous condition. In that hypothetical

situation, the plaintiff clearly violated state statutes which required persons operating vehicles to obtain license tags and display working taillights. Would the fact that the plaintiff violated those statutes lead to the conclusion that he was an unintended and unpermitted user of the road? Clearly not. Though the plaintiff may have violated state statutes, the purpose of those statutes was not to prevent the type of harm the plaintiff encountered on the road. The plaintiff's statutory violations were irrelevant to the county's duty to maintain its roads in a safe condition and to warn of hazardous conditions on public roadways. The statutory violations would not destroy those duties owed by the county to the driving public.

Similarly, plaintiff's breach of the provision in this case does not destroy the city's duty to exercise ordinary care to maintain its property in a reasonably safe condition. The mere fact that this ordinance existed and plaintiff violated it does not immunize the city from the responsibilities imposed by the legislature under section 3—102 of the Act because that provision was enacted for the protection of others, not plaintiff. See *Fox*, 308 Ill. App. 367, 31 N.E.2d 805.

■ To determine whether plaintiff was an intended user of property, we look to the property itself to determine its intended use. *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 426, 592 N.E.2d 1098, 1102 (1992). Here, the city permits swimming, surfing, skiing, and boating on this lake. It also permits owners of lakefront property to set up docks in the water at the edge of their property. Plaintiff was injured in an area where docks were permitted.

■ The city must have considered that boaters, skiers, and surfers would necessarily use a portion of the lake within the prohibited area as a means of ingress and egress. This is evidenced by a provision in the same subsection of the ordinance that prohibits skiing within 75 feet of the shoreline. That provision indicates that the city is solely responsible for designating areas for ingress and egress by skiers and boaters. Despite this provision, there is no evidence that the city excluded or identified any routes for ingress and egress in that part of the lake where plaintiff was injured. The city must have recognized that it would be difficult, if not impossible, for a skier or boater to gain access to areas where skiing and boating activities are permitted without traversing the area prohibited by its ordinance. It would be absurd to permit a lot owner to have a boat dock but provide no means for the owner to access the areas where boating and skiing are permitted. See *Di Domenico v. Village of Romeoville*, 171 Ill. App. 3d 293, 525 N.E.2d 242 (1988).

From all indications, the property was intended to be used for water-based recreation activities, including skiing and boating.

Therefore, we find that plaintiff was an intended and a permitted user of this area of the lake. See *Marshall v. City of Centralia*, 143 Ill. 2d 1, 570 N.E.2d 315 (1991). Accordingly, the trial court improperly concluded that the city owed no duty under section 3—102 of the Act.

In finding that plaintiff is an intended and permitted user of the lake, we have taken no position on whether plaintiff was negligent while using it. We point this out to emphasize the distinction between an unintended and prohibited use of property and an intended and permitted use by an allegedly negligent plaintiff. *Wagner v. City of Chicago*, 166 Ill. 2d 144, 155, 651 N.E.2d 1120, 1125 (1995). If the city has evidence that plaintiff was negligent and that his negligence caused or contributed to his injuries, the city may certainly present that evidence to the jury.

█ In granting the city's motion for summary judgment, the trial court also found that plaintiff could not set forth facts to establish that the city's conduct was willful and wanton and therefore could not prove liability under section 3—106 of the Act (745 ILCS 10/3—106 (West 1996)). Section 3—106 of the Act provides that a public entity is liable for injuries based upon a condition of the property used for recreational purposes, if the entity is guilty of willful and wanton conduct that proximately causes injury. 745 ILCS 10/3—106 (West 1996).

●7 The Act defines *willful and wanton conduct* as a course of action that shows an actual or deliberate intention to cause harm or a course of action that shows an utter indifference to or conscious disregard for the safety of others. 745 ILCS 10/1—210 (West 1996). *Willful and wanton* means the failure, after gaining actual or constructive notice of an impending danger, to exercise ordinary care to prevent harm to others, when that danger poses an unreasonable risk of harm. *Green v. Chicago Park District*, 248 Ill. App. 3d 334, 618 N.E.2d 514 (1993). Whether specific acts amount to willful and wanton conduct is ordinarily a question for the jury. *Green*, 248 Ill. App. 3d 334, 618 N.E.2d 514.

█ Plaintiff has alleged in his complaint that the city had actual or constructive notice of a latent hazard, that the city council had considered the hazard at council meetings but failed to initiate any action to remove or to warn of the hazard, and that plaintiff had no knowledge of the hazard. During the hearing on the summary judgment motion, plaintiff presented information regarding statements made by some members of the city council which indicated that they had direct knowledge of the presence of this submerged pipe. The submerged pipe was certainly capable of causing serious injury. It posed a hidden danger to swimmers, waders, and other persons play-

ing in the water. This dangerous condition was only 30 feet from the shore. Taking the evidence and all reasonable inferences in a light most favorable to plaintiff, we believe that a jury could find that the city's failure to act to prevent or to warn of the dangerous condition, known only to it, constituted reckless or willful and wanton conduct. Therefore, we find that the trial court abused its discretion in invading the province of the jury on this issue.

Based upon our resolution of these issues, plaintiff may pursue his action under section 3—102, which imposes a duty on the city to exercise ordinary care in maintaining its property in a reasonable safe condition, and/or under section 3—106, which imposes liability for willful and wanton negligence regarding property used for recreational purposes. See *Sites v. Cook County Forest Preserve District*, 257 Ill. App. 3d 807, 629 N.E.2d 621 (1994).

Accordingly, the judgment of the circuit court is reversed and the cause remanded for further proceedings.

Reversed and remanded.

GOLDENHERSH and HOPKINS, JJ., concur.