FIRST MIDWEST TRUST COMPANY, N.A., Guardian of the Estate of Joseph D. Schweinberg, a Minor, Plaintiff-Appellant, v. GREG BRITTON, Defendant (The Village of Round Lake Beach, Defendant-Appellee).

Second District    No. 2—00—0841

Opinion filed June 6, 2001.

Stephen M. Passen and John J. Driscoll, both of Stephen M. Passen, Ltd., of Chicago, for appellant.

Stacey L. Seneczko and Joshua G. Vincent, both of Hinshaw & Culbertson, of Chicago, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, First Midwest Trust Company, N.A., as guardian of the estate of Joseph Schweinberg, a minor, appeals from the February 22, 2000, order of the circuit court of Lake County granting summary judgment in favor of defendant Village of Round Lake Beach (the Village). In its complaint, the plaintiff sought recovery for personal injuries suffered by Joseph Schweinberg resulting from an off-road motorbike accident occurring on Village property. The trial court found that Schweinberg was not an intended user of the Village's property and that the Village was therefore immunized from liability pursuant

to section 3—102 of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/3—102 (West 1996)). We affirm.

The facts alleged in the plaintiff's complaint are as follows. On October 20, 1996, Schweinberg, age 12, was operating a motorized dirt bike southbound on a dirt path on vacant property owned by the Village. At the same time, defendant Greg Britton was operating a motorized dirt bike northbound along the same dirt trail. As Britton proceeded to make his motorbike go over a "jump," he collided with the motorbike being operated by Schweinberg. As a result of the accident, Schweinberg suffered a brain injury.

The physical layout of the property consisted of dirt trails and four "jumps." The plaintiff alleged that the motorbike trails had been in existence since 1984. The plaintiff alleged that the Village was aware that people were using the motorbike trails on its property and that it did not warn or guard against the dangers of such conduct. The Village was also alleged to have created the "jumps" on the property by dumping large quantities of dirt, soil, gravel, and other debris across the trails. The plaintiff alleged that visibility on the trails was limited because of the presence of foliage, curves, hills, valleys, and the "jumps." These features sometimes blocked the view of oncoming cyclists traveling from the other direction.

The plaintiff named both the Village and Britton as defendants; however, only those counts directed against the Village are at issue on appeal. As amended, the complaint contained five counts against the Village. Count I alleged that the Village failed to warn and guard against the dangers involved in the hazardous recreational activity of off-road motorcycling. Count II alleged willful and wanton conduct by the Village in failing to warn and guard against the dangers of off-road motorcycling despite its knowledge of prior injuries occurring on its property. Count III also alleged willful and wanton conduct by the Village in permitting its property to be used for off-road motorcycling despite its knowledge of dangerous conditions on its property. Count IV alleged that the Village failed to maintain its property in a reasonably safe condition by permitting the existence of off-road motorcycle trails and "jumps." Count V was predicated upon *Kahn v. James Burton Co.*, 5 Ill. 2d 614 (1955), and alleged that the Village breached its duty to protect children from a dangerous condition on its premises.

On December 1, 1999, the Village filed a motion for summary judgment arguing that it owed no duty to Schweinberg under section 3—102 of the Act because Schweinberg was not an intended user of the Village's property at the time of his injury. The Village argued that, at the time in question, there existed a municipal ordinance that

specifically prohibited the operation of motorbikes on publically owned property. The ordinance provided, in relevant part:

"It shall be unlawful for any person to operate, drive or ride on any minibike, go-cart and other similarly operated motor-driven vehicle (exclusive of motorcycles) on any public street, alley or thoroughfare, or upon the publically owned property." Village of Round Lake Beach Municipal Code § 5—8—1(A) (1994).

The Village argued that, because Schweinberg was prohibited from operating a motorbike on public property under the ordinance, he was not an intended user of the property and the Village did not owe him a duty to maintain the property in a reasonably safe condition.

In response to the motion for summary judgment, the plaintiff argued that, despite the Village ordinance prohibiting motorbiking, Schweinberg was nonetheless an intended and permitted user of the property. In support of its position, the plaintiff attached excerpts of the discovery depositions from the individuals who witnessed the accident, as well as from several police officers and other municipal employees who worked for the Village. This testimony indicated that, since 1975, the Village had been aware that off-road motorcycling was taking place on its property. Although Village police officers were aware of the ordinance prohibiting motorbiking, the ordinance was not always enforced. Some police officers stopped children from motorbiking only after dark or in response to noise complaints. Other officers told children that it was all right to ride on the property. Patrolmen were occasionally observed parking their cars on the side of the road to watch individuals ride their motorbikes on the property.

These witnesses also testified that the Village dumped dirt, gravel, and asphalt on the property on several occasions in 1993 and 1994. Some of these piles rose in height to between 10 and 15 feet. Individuals would use these piles as "jumps" for their motorbikes. The "jump" involved in the instant case was elevated 9 to 10 feet higher than the trail below. Several police officers testified that the jump where Schweinberg's accident occurred was particularly dangerous because of its size and location on the property.

The police officers also testified to at least three prior motorbike accidents occurring on the property. On one occasion, a teenager broke his arm when he fell off a motorbike. On another occasion, a boy injured his leg while going over a "jump" on his motorbike. Finally, two years prior to the instant accident, a boy died in a motorbike accident when the foot peg of his bike entered his leg, causing him to bleed to death. At no time prior to the accident in the instant case did the Village post any warning signs on the property.

In reliance upon this testimony, the plaintiff argued that the Vil-

lage intended to permit children to motorbike on the property. The plaintiff argued that the presence of well-worn trails on the property and the Village's failure to enforce the ordinance was a manifestation of the Village's intent to allow motorbiking on the property.

On February 22, 2000, the trial court entered an order granting the Village's motion for summary judgment. The trial court found that, although Schweinberg may have been a permitted user of the property, he was not an intended user. Accordingly, the trial court found that the Village owed no duty to Schweinberg under section 3—102 of the Act. In reaching its conclusion, the trial court placed particular importance upon the Village ordinance prohibiting motorbiking on public lands. Following the denial of its motion to reconsider, the plaintiff filed a timely notice of appeal.

On appeal, the plaintiff argues that the trial court erred in concluding that the Village owed no duty to Schweinberg as a matter of law. The plaintiff argues that the Village was aware of the use of its property for off-road motorbiking since 1975 and that it took no action to stop such activities. The plaintiff argues that the Village's failure to enforce its ordinance prohibiting the conduct manifested its intent that the property be used for off-road motorbiking. The plaintiff also argues that the trial court erred in failing to consider the existence of separate and distinct common-law duties owed by the Village in addition to those codified in section 3—102 of the Act.

■ Summary judgment is appropriate when the pleadings, depositions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1996). Summary judgment is a drastic means of disposing of litigation and should be allowed only when the right of the movant is free and clear from doubt. *McCullough v. Gallaher & Speck*, 254 Ill. App. 3d 941, 948 (1993). The disposition of a summary judgment motion is not discretionary, and the standard of review is *de novo. Quinton v. Kuffer*, 221 Ill. App. 3d 466, 471 (1991).

■ To recover in a negligence action, a plaintiff must allege a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. *Lipper v. City of Chicago*, 233 Ill. App. 3d 834, 836 (1992). Whether the defendant owed the plaintiff a duty of care is a question of law for the court. *Marshall v. City of Centralia*, 143 Ill. 2d 1, 6 (1991).

■ As noted by the trial court, section 3—102(a) of the Act codifies the Village's general duty at common law to maintain its property in a reasonably safe condition. *Washington v. City of Chicago*, 188 Ill. 2d 235, 239 (1999). That section provides as follows:

"Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3—102(a) (West 1996).

Pursuant to this language, the Village has a duty of ordinary care to maintain its property only for people who are both intended and permitted users of the property. Our supreme court has held that, although intended users of property are permitted users by definition, permitted users are not necessarily intended users. *Boub v. Township of Wayne*, 183 Ill. 2d 520, 524 (1998). Therefore, in the instant case, we must determine whether Schweinberg was an intended user of the Village's property when he was injured while riding his off-road motorbike.

■ A municipality's intent with regard to the use of its property must be inferred from the circumstances. *Sullivan v. City of Hillsboro*, 303 Ill. App. 3d 650, 653 (1999). An important circumstance to consider is whether the municipality has enacted an ordinance governing the use of the property. *Sullivan*, 303 Ill. App. 3d at 653. An ordinance, like any other legislation, must be interpreted in light of the evil to be protected against. *Sullivan*, 303 Ill. App. 3d at 653. If the harm suffered by the injured party is the type of harm that the ordinance was enacted to prevent or if the injured party falls into the class of people that the ordinance was intended to protect, then a violation of the ordinance extinguishes the municipality's legal duty or liability. *Sullivan*, 303 Ill. App. 3d at 653. Illinois courts have consistently held that, when a person violates a municipal ordinance prohibiting the use of municipal property in a certain manner, that person is not an intended user of the property under section 3—102(a). See *Montano v. City of Chicago*, 308 Ill. App. 3d 618, 624 (1999); *Lipper v. City of Chicago*, 233 Ill. App. 3d 834, 838 (1992); *Prokes v. City of Chicago*, 208 Ill. App. 3d 748, 750 (1991).

In *Montano*, a delivery person filed suit against a municipality for injuries sustained after he tripped on uneven pavement while unloading a delivery truck situated in an alley. *Montano*, 308 Ill. App. 3d at 620. The court held that the municipality owed him no duty of care because he was not an intended user of the alley. In reaching its conclu-

sion, the court noted that the delivery person had violated a municipal ordinance prohibiting the parking of a vehicle in an alley under certain circumstances. *Montano*, 308 Ill. App. 3d at 623-24. The court explained that the ordinance manifested the Village's intent that the delivery person was not an intended user of the property. *Montano*, 308 Ill. App. 3d at 624.

In *Lipper*, the plaintiff filed suit against a municipality for injuries suffered while he was riding his bicycle on a sidewalk and struck a raised portion of the sidewalk. *Lipper*, 233 Ill. App. 3d at 836. The plaintiff's conduct was prohibited by a municipal ordinance barring bicycling on sidewalks unless the sidewalk was specifically designated and marked as a bicycle route. *Lipper*, 233 Ill. App. 3d at 837. The court found that the municipality's intent could be determined based on the existence of the ordinance prohibiting adult bicycling on sidewalks. *Lipper*, 233 Ill. App. 3d at 838. Accordingly, the court concluded that the plaintiff was not an intended user of the sidewalk and that the municipality owed no duty. *Lipper*, 233 Ill. App. 3d at 838.

■ In light of these authorities, we consider the facts presented in the instant case. Here, the Village had enacted an ordinance that specifically prohibited the operation of motorbikes on public property. Village of Round Lake Beach Municipal Code § 5—8—1 (1994). Although the Village has not presented any evidence regarding the purpose for which the ordinance was enacted, we believe that the plain language of the ordinance manifests the Village's intent that the operation of motorbikes was not an intended use of this property. See *Montano*, 308 Ill. App. 3d at 624; *Lipper*, 233 Ill. App. 3d at 838. We believe that the purpose of the ordinance was to protect the safety of the general public and to prevent injuries on public property from the use of off-road motorbikes. Therefore, we conclude that, at the time he violated the ordinance, Schweinberg fell within the class for whose protection the ordinance was passed. See *Sullivan*, 303 Ill. App. 3d at 653. Accordingly, in light of the ordinance, we agree with the trial court that Schweinberg was not an intended user of the property and that the Village did not owe him a duty to maintain its property in a reasonably safe condition.

We believe that an examination of the property itself also supports this conclusion. Contrary to the plaintiff's arguments, we do not believe that there were any physical manifestations on the property to indicate that the Village intended the property to be used for motorbiking. There were no signs or other markings on the property that indicated that such a use was permitted. Although there were apparently well-worn trails on the property, such trails were not created by

the Village but were instead the result of trespassing motorbikes. Additionally, although the Village dumped piles of dirt or debris on the property, there is no evidence indicating that this was done for the purpose of creating "jumps."

The plaintiff argues that the use of the property for off-road motorbiking was intended in light of the fact that it had been ongoing for a number of years with the knowledge of the police. Although the plaintiff has presented evidence that the police did not consistently enforce the ordinance prohibiting motorbiking on the property, we do not believe that this transformed Schweinberg into an intended user of the property. The frequency with which Schweinberg and other children purportedly used the property to ride motorbikes did not alter the Village's express intent that such property should not be used for such activities. At most, the plaintiff's allegations demonstrate that Schweinberg was a permitted user of the property, as opposed to an intended one. See *Khalil v. City of Chicago,* 283 Ill. App. 3d 161, 164-65 (1996) (although property may be commonly used for purposes other than those intended by the municipality, such permitted uses do not alter the municipality's intent).

■ Indeed, we are unaware of any authority holding that a municipality's failure to enforce an ordinance governing the use of public property rendered the prohibited use an intended one. We believe that such a rule would undermine the purpose of the Act. In determining intent, the relevant focus must be upon the municipality's design for the use of the property. See *Boub v. Township of Wayne,* 183 Ill. 2d 520, 525 (1998). Contrary to the plaintiff's contentions, a municipality's intent may not be determined based upon a police officer's decision whether to enforce a municipal ordinance in a particular instance. See generally 745 ILCS 10/2—103 (West 1996); *Wojdyla v. City of Park Ridge,* 148 Ill. 2d 417, 425-26 (1992).

■ The plaintiff also argues that the allegations of its complaint fall within the exceptions to immunity provided under sections 3—106 and 3—109 of the Act. Section 3—106 of the Act provides that a municipality is not immune for willful and wanton conduct that proximately causes an injury on public property intended or permitted to be used for recreational purposes. 745 ILCS 10/3—106 (West 1996). Section 3—109 of the Act provides that a municipality is not immune for an injury to a person who participates in a hazardous recreational activity on public land when the municipality fails to guard or warn the individual of a dangerous condition that it has actual and constructive notice of and of which the person is not aware. 745 ILCS 10/3—109 (West 1996). Section 3—109 also provides that a municipality is not immune for willful and wanton conduct that proximately causes

an injury to a person involved in a hazardous recreational activity on public land. 745 ILCS 10/3—109 (West 1996).

■ Contrary to the plaintiff's assertions, however, sections 3—106 and 3—109 of the Act do not impose an independent duty upon the Village. This court has held that, where there is no duty owed to a plaintiff under section 3—102 of the Act, no duty exists under any of the exceptions to the subsequent immunity sections relating to the use of public property. *Sweet v. Village of Algonquin*, 169 Ill. App. 3d 78, 95 (1988) (holding that when there was no duty under section 3—102 of the Act, there could also be no duty under sections 3—103 and 3—104 of the Act). As noted above, section 3—102 of the Act creates no new duties; it simply articulates the common-law duty to which the subsequently delineated immunities apply. *Sweet*, 169 Ill. App. 3d at 95. The "duties" described in the exceptions to these immunity provisions all derive from the basic common-law duty that is articulated in section 3—102. *Sweet*, 169 Ill. App. 3d at 95.

■ As discussed above, Schweinberg was not an intended user of the property so as to impose a duty upon the Village under section 3—102 of the Act. Therefore, the Village could not owe a duty to Schweinberg under the exceptions to immunity contained in section 3—106 or 3—109 either. The property was not intended for use as a site for recreational activity, hazardous or otherwise, and sections 3—106 and 3—109 of the Act are clearly inapplicable.

The plaintiff alternatively argues that the allegations of its complaint allege two separate and distinct common-law duties outside the scope of section 3—102 of the Act for which the Village is not immune. First, the plaintiff argues that the Village is liable for permitting a hazardous and dangerous activity on its property. Second, the plaintiff argues that the Village breached its duty to protect children trespassers from a dangerous condition on its premises. See *Kahn v. James Burton Co.*, 5 Ill. 2d 614 (1955).

Despite the plaintiff's attempts to tailor its allegations to fall outside the Act, we nonetheless conclude that they are predicated upon the condition of the Village's property. In each of the counts of the complaint, the plaintiff alleges that "dangerous conditions," including varied elevations, obstructed views, foliage, curves, and the presence of "jumps," existed on the property, making it dangerous to motorbike. Such allegations concern the condition of the land and fall squarely within the scope of section 3—102 of the Act.

Moreover, we note that when a public entity is immunized under one of the provisions of the Act, courts are not authorized to make exceptions to the Act that would nevertheless permit the imposition of liability. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill.

2d 335, 346-47 (1998). Our supreme court has held that the Illinois General Assembly has the ultimate authority in determining whether a unit of local government is immune from liability and that the language of the Act should control any analysis of whether a plaintiff's complaint states a cause of action. *Harinek*, 181 Ill. 2d at 346-47 (holding that a plaintiff could not seek to invoke the "special duty" doctrine in instances where the Act had specifically granted immunity). In instances where the Act applies, a court may not negate immunity by applying a judicially created rule. *Harinek*, 181 Ill. 2d at 346-47. In the instant case, as the Village is clearly immune under section 3—102 of the Act, we believe that the trial court properly granted summary judgment in favor of the Village.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed, and the cause is remanded for further proceedings as to the remaining counts against codefendant Greg Britton.

Affirmed; cause remanded.

BYRNE and CALLUM, JJ., concur.