# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Pikovsky v. 8440-8460 North Skokie Boulevard Condominium Ass'n*, 2011 IL App (1st) 103742

---

| | |
|---|---|
| Appellate Court Caption | TAMARA PIKOVSKY, Plaintiff-Appellant, v. 8440-8460 NORTH SKOKIE BOULEVARD CONDOMINIUM ASSOCIATION, INC., and ROSEN REALTY AND MANAGEMENT, INC., Defendants-Appellees and Third-Party Plaintiffs (Maintenance Hot Line, Inc., and Canopy Enterprises, Inc., d/b/a Canopy Snow Plowing, Third-Party Defendants). |
| District & No. | First District, Second Division<br>Docket No. 1-10-3742 |
| Filed | December 27, 2011 |
| Rehearing denied | February 2, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for defendant condominium association in plaintiff's action for the injuries she suffered when she slipped and fell on the "icy snow mounds" on the rear-entrance sidewalk going to the building where her condominium unit was located, since the Illinois Snow and Ice Removal Act barred her negligence claim against defendants and the snow removal and disposal ordinance of the city where the condominium was located did not apply to the sidewalk where plaintiff fell, because that sidewalk was on private property and was not a "public way." |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-L-62033; the Hon. Roger G. Fein, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Parad Law Offices, P.C., of Northbrook (Boris Parad, of counsel), for appellant.

Wiedner & McAuliffe, Ltd., of Chicago (Richard J. Leamy, Jr., Robert H. Fredian, John E. Bauman and Kristen A. Schank, of counsel), for appellees.

Panel

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Quinn and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal arises from a July 14, 2010 order entered by the circuit court of Cook County which granted defendants-appellees 8400-8460 North Skokie Boulevard Condominium Association, Inc., and Rosen Realty Management Inc.'s (Skokie and Rosen) motion for summary judgment. On appeal, plaintiff-appellant Tamara Pikovsky (Tamara) argues that: (1) the trial court erred in finding that the Illinois Snow and Ice Removal Act (745 ILCS 75/1 *et seq.* (West 2008)) barred her negligence claim against Skokie and Rosen; (2) Skokie and Rosen violated the Skokie obstructions and snow removal and disposal ordinances (Skokie Code of Ordinances §§ 90-49, 90-51 (2002)); and (3) the trial court erred in finding that the Illinois Snow and Ice Removal Act preempted the Skokie obstructions and snow removal and disposal ordinances. For the following we reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                              BACKGROUND

¶ 3    8460 North Skokie Boulevard is a building on the corner of Skokie Boulevard and Lee Street in the town of Skokie, Illinois. The rear entrance to the building is accessible through a sidewalk that is adjacent to the building's parking lot (rear entrance sidewalk). The rear entrance sidewalk abuts the Lee Street sidewalk. In 2008, the building was owned and controlled by 8440-8460 North Skokie Boulevard Condominium Association, Inc. The building was managed by Rosen Realty and Management, Inc. On October 18, 2007, Skokie and Rosen entered into a contract with Canopy Enterprises, Inc., d/b/a Canopy Snow Plowing (Canopy). The contract prescribed that Canopy would plow away the snow in the parking lot of the building during the winter from November 15, 2007 through April 1, 2008. On November 10, 2007, Skokie and Rosen entered into a contract with Maintenance Hot Line, Inc. (Maintenance Hot Line). The contract prescribed that Maintenance Hot Line would provide daily, weekly, monthly and seasonal janitorial services for a period of one year.

Maintenance Hot Line's duties included removing snow from the Lee Street sidewalk. Neither contract provided for snow removal on the rear entrance sidewalk. The Canopy contract stated that Canopy would provide snow removal services for area other than the parking lot at an extra cost upon request. Skokie and Rosen never requested that Canopy remove snow from the rear entrance sidewalk.

¶ 4    On February 21, 2008, Tamara was a resident of 8460 N. Skokie Boulevard, Skokie, Illinois. On that day, Tamara was returning home from a visit with her mother and attempted to use the rear entrance sidewalk to get to the building. Tamara claims that she slipped and fell on the rear entrance sidewalk due to "icy snow mounds." As a result of the fall, Tamara suffered a fractured left hip and remained in the hospital from February 21 to February 27, 2008. Tamara claims that the icy snow mounds were formed by snow that was plowed from the parking lot onto the rear entrance sidewalk that leads to the building. During his deposition, George Lipp (Lipp), co-owner of Canopy, stated that sometimes he plowed snow from the parking lot onto the rear entrance sidewalk and other times he plowed snow to the perimeter of the parking lot. Lipp stated that Canopy was never asked to deposit snow in another manner. Tamara also claims that the snow and ice mounds were melting and freezing over on the rear entrance sidewalk during the entire winter and that the piles could reach up to four or five feet high.

¶ 5    On July 28, 2008, Tamara filed a complaint for negligence against Skokie and Rosen in the circuit court of Cook County. Tamara claimed that Skokie and Rosen, as owners, operators and controllers of the condominium building, failed to exercise reasonable care by creating an unsafe and dangerous condition of unnatural accumulation on the rear entrance sidewalk. On August 27, 2008, Skokie and Rosen filed an answer and third-party complaint for contribution against Maintenance Hot Line and Canopy. In their answer and third-party complaint, Skokie and Rosen denied all of Tamara's allegations and pled those same allegations against Maintenance Hot Line and Canopy. The parties exchanged discovery and on May 28, 2009, Tamara filed supplemental responses to Skokie and Rosen's request to produce and Maintenance Hot Line and Canopy's request to produce. The supplemental responses contained a "declaration"[1] by Chad Paul, a resident of 8460 N. Skokie Boulevard. The declaration stated that plow trucks plowed snow onto the rear entrance sidewalk creating mounds that were icy and dangerous throughout the entire winter. On June 12, 2009, Tamara was deposed. On July 24, 2009, Lipp was deposed. On February 22, 2010, Umut Ates, owner of Maintenance Hot Line, was deposed.

¶ 6    On April 30, 2010, Skokie and Rosen filed a motion for summary judgment pursuant to section 2-1005 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1005 (West

---

[1]The declaration is a one-page document that contains eight statements from a resident of Tamara's building regarding the ice and snow mounds on the rear entrance sidewalk and Canopy's plowing procedures. The declaration contains the resident's signature below the statements and a verification that is signed by the resident as well. The declaration appears to be an attempt by Tamara to present a document that functions as an affidavit. The declaration was filed with the trial court; however, it was not presented to the court and not included in Tamara's June 2, 2010 response opposing summary judgment.

2010)).[2] Skokie and Rosen claimed that the Illinois Snow and Ice Removal Act (the Act) (745 ILCS 75/2 (West 2008)) granted them immunity from liability for negligence arising out of snow and ice removal on residential sidewalks. On June 2, 2010, Tamara filed a response to Skokie and Rosen's motion for summary judgment claiming that: (1) Skokie and Rosen were not protected by the Act because they never actually attempted to remove snow from the rear entrance sidewalk and thus are not of the class of owners protected; (2) Skokie and Rosen breached their duties to remove an unnatural accumulation of snow and ice and protect the foreseeable plaintiff from harm; (3) Skokie and Rosen violated the Skokie obstructions and snow and ice removal ordinances (Skokie municipal ordinances) (Skokie Code of Ordinances §§ 90-49, 90-51 (2002)); (4) the Act does not immunize negligent removal of snow from the parking lot; (5) Skokie and Rosen's conduct was willful and wanton; and (6) Skokie and Rosen have not demonstrated a lack of a genuine issue of material fact. Tamara did not include the Chad Paul declaration in her response opposing summary judgment. On July 14, 2010, the trial court issued an order granting Skokie and Rosen's motion for summary judgment. The trial court held that the Act provided Skokie and Rosen with immunity from claims arising from negligent snow and ice removal and that Skokie and Rosen's conduct was not willful and wanton. The court also held that the Skokie municipal ordinances do not apply because: (1) the rear entrance sidewalk is located entirely on Skokie and Rosen's property and therefore is not a "public way"; (2) the ordinances are not public safety measures for which tort liability was intended; and (3) even if one or both of the ordinances were applicable, they do not supercede or nullify the immunization afforded by the Act, nor do the ordinances provide a civil remedy.

¶ 7        On August 13, 2011, Tamara filed a motion for reconsideration of the trial court's order granting summary judgment. Tamara attached the Chad Paul declaration to her motion to reconsider. On the same day, Tamara filed a motion for leave to file a first amended complaint. On September 24, 2010, Skokie and Rosen filed a response to Tamara's motion for reconsideration and argued that the Chad Paul declaration should be stricken. On November 18, 2010, the trial court issued an order denying Tamara's motion for reconsideration. The court refused to consider the Chad Paul declaration because Tamara did not present the declaration to the court, did not include it in her response opposing the motion for summary judgment, and offered no explanation as to why the declaration was not available and utilized at the time of the original hearing. Further, the court found that Tamara's arguments in her motion to reconsider were the same arguments restated from her response opposing the motion for summary judgment. The trial court did not rule on Tamara's motion for leave to file a first amended complaint. On December 10, 2010, Tamara filed the notice of appeal.

---

[2]Canopy also filed a motion for summary judgment on April 20, 2010. However, because the trial court ruled in favor of Skokie and Rosen, it found that the issue of the third-party complaint against Canopy was moot.

¶ 8                                    ANALYSIS

¶ 9          We determine the following issues on appeal: (1) whether the trial court erred in ruling
       that the Act barred Tamara's negligence claim against Skokie and Rosen; and (2) whether
       the trial court erred in ruling that the Skokie municipal ordinances were inapplicable in this
       case. As a preliminary matter before we consider Tamara's arguments, we must determine
       if this court has jurisdiction. On July 14, 2010, the trial court issued an order granting Skokie
       and Rosen's motion for summary judgment. At this time, Canopy had also filed a motion for
       summary judgment but the trial court did not rule on that motion. During oral argument, the
       trial court noted that any cause of action against Canopy or Maintenance Hot Line is
       predicated on the existence of a cause of action against Skokie and Rosen. Therefore,
       because the court ruled that Skokie and Rosen were entitled to judgment as a matter of law
       against Tamara, the court reasoned that the issue of Canopy's motion for summary judgment
       was moot and need not be decided. Tamara filed a motion for reconsideration on August 10,
       2010. The trial court denied the motion for reconsideration on November 18, 2010. Tamara
       then filed a timely notice of appeal on December 17, 2010, pursuant to Illinois Supreme
       Court Rule 303(a)(1) (eff. June 4, 2008). Therefore, we are able to consider Tamara's
       arguments on appeal.

¶ 10         When reviewing an order granting summary judgment, the standard of review is *de novo*.
       *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349, 701 N.E.2d 493, 496 (1998).
       The reviewing court must construe the record in the light most favorable to the nonmoving
       party and will reverse an order granting summary judgment if it determines that a genuine
       issue of material fact exists. *Schulenburg v. Rexnord, Inc.*, 254 Ill. App. 3d 445, 449, 627
       N.E.2d 16, 19 (1993).

¶ 11         We first examine Tamara's argument that the trial court erred in ruling that the Act
       barred her negligence claim against Skokie and Rosen. The Act contains two relevant parts,
       which state:

            "§ 1. It is declared to be the public policy of this State that owners and others residing
       in residential units be encouraged to clean the sidewalks abutting their residences of
       snow and ice. The General Assembly, therefore, determines that it is undesirable for any
       person to be found liable for damages due to his or her efforts in the removal of snow or
       ice from such sidewalks, except for acts which amount to clear wrongdoing, as described
       in Section 2 of this Act." 745 ILCS 75/1 (West 2008).

            "§ 2. Any owner, lessor, occupant or other person in charge of any residential
       property, or any agent of or other person engaged by any such party, who removes or
       attempts to remove snow or ice from sidewalks abutting the property shall not be liable
       for any personal injuries allegedly caused by the snowy or icy condition of the sidewalk
       resulting from his or her acts or omissions unless the alleged misconduct was willful or
       wanton." 745 ILCS 75/2 (West 2008).

       Issues of statutory construction are subject to *de novo* review. *In re Estate of Dierkes*, 191
       Ill. 2d 326, 330, 730 N.E.2d 1101, 1103 (2000). The court must give effect to the intent of
       the legislature. *Id*. at 331, 730 N.E.2d at 1104. In order to do so, the court must first look at
       the plain language of the statute. *Id*.

¶ 12    Tamara points out that the purpose of the Act is to encourage owners of residential property to clean snow and ice off of sidewalks. Thus, she argues that the Act is designed only to protect those owners that actually make an effort to remove snow and ice from sidewalks. Tamara argues that Skokie and Rosen never once attempted to remove the snow and ice mounds from the rear entrance sidewalk and therefore they do not fall under the class of owners protected by the Act. Tamara claims that the trial court's interpretation of the Act would contradict the purpose and the plain language of the Act. She does not cite any cases in support of her theory. We find this reasoning unpersuasive.

¶ 13    In this case, Skokie and Rosen had contracts with both Canopy and Maintenance Hot Line regarding snow removal, among other services. Canopy was in charge of clearing snow from the building's parking lot and Maintenance Hot Line was in charge of shoveling snow and ice off the Lee Street sidewalk. Both Canopy and Maintenance Hot Line performed their duties pursuant to their contracts throughout the 2007-08 winter. Thus, Skokie and Rosen were making a conscious effort to clear snow and ice from their premises in order to make the building more accessible for residents and invitees. Section 2 of the Act states "[a]ny owner *** shall not be liable for any personal injuries allegedly caused by the snowy or icy condition of the sidewalk resulting from his or her acts *or omissions* unless the alleged conduct [is] willful or wanton." (Emphasis added.) 745 ILCS 75/2 (West 2008). Although Tamara argues in opposition, we find that Skokie and Rosen's failure to remove the snow and ice mounds from the rear entrance sidewalk is an omission in their overall snow removal efforts.

¶ 14    Tamara also argues that summary judgment should not have been granted because the snow and ice mounds were unnatural accumulations and Skokie and Rosen breached their duty to remedy the dangerous conditions. In support of her argument, Tamara cites many cases that discuss the liability imposed on property owners under common law when they create unnatural accumulations that result in injuries. She also cites cases that discuss a property owner's common law duty to remedy self-created unnatural accumulations and unreasonably dangerous conditions. However, Tamara fails to recognize that *the Act provides an exception* to the common law duty that would otherwise be imposed. Section 2 of the Act provides immunity for owners of residential property regarding negligent acts or omissions in attempting to remove ice and snow from sidewalks. 745 ILCS 75/2 (West 2008). "Where, under the common law, an owner or snow-removal contractor may have been liable for such injuries where the injuries were the result of an unnatural accumulation of snow and ice created or aggravated by the owner or snow-removal contractor, they are now immune unless their conduct was willful or wanton." *Gallagher v. Union Square Condominium Homeowner's Ass'n*, 397 Ill. App. 3d 1037, 1043, 922 N.E.2d 120, 1207 (2010). Therefore, it is irrelevant whether the snow and ice mounds on the rear entrance sidewalk were an unnatural accumulation. Thus, the Act applies to Skokie and Rosen.

¶ 15    Tamara contends that even if the Act does apply to Skokie and Rosen in this case, they should be held liable for her injuries because their conduct was willful and wanton. Tamara argues that Skokie and Rosen had actual and constructive knowledge of the snow and ice mounds, and showed reckless disregard for Tamara's safety by failing to remove the mounds. Willful and wanton conduct has been defined as "a course of action which shows actual or

deliberate intent to harm or which, if the course of action is not intentional, shows an utter indifference to or conscious disregard for a person's own safety or the safety or property of others." (Internal quotation marks omitted.) *Kurczak v. Cornwell*, 359 Ill. App. 3d 1051, 1060, 835 N.E.2d 452, 460 (2005) (quoting *Pfister v. Shusta*, 167 Ill. 2d 417, 421, 657 N.E.2d 1013 (1995)). Tamara points out that willful and wanton conduct can also mean "the failure, after gaining actual or constructive notice of an impending danger, to exercise ordinary care to prevent harm to others, when that danger poses an unreasonable risk of harm." *Sullivan v. City of Hillsboro*, 303 Ill. App. 3d 650, 655, 707 N.E.2d 1273, 1277 (1999).

¶ 16    In *Sullivan*, the plaintiff was injured by striking his leg on a submerged pipe in a lake that was 30 feet from the shore. See generally *Sullivan*, 303 Ill. App. 3d 650, 707 N.E.2d 1273. The plaintiff was able to survive a motion for summary judgment by alleging that the city had actual or constructive knowledge of the latent hazard, that the city council had considered the hazard at council meetings but failed to remove the hazard, and that the plaintiff had no knowledge of the hazard. *Id*. at 655, 707 N.E.2d at 1277. In this case, the trial court found that Tamara presented no evidence that suggested willful and wanton conduct. We agree with that finding. Tamara does not present any facts that show that the owners considered the snow and ice mounds to be dangerous in this case. Further, Tamara did not show that there were any complaints made about the snow and ice mounds, or any other injuries as a result of the snow and ice mounds. Tamara attempts to reference the Chad Paul declaration in her statement of facts and as an appendix to her brief in order to establish Skokie and Rosen's knowledge of the snow and ice mounds. However, we refuse to consider the declaration because the trial court did not consider the declaration in making its ruling. A trial court is not required to consider evidentiary material submitted for the first time with a motion for reconsideration after an order granting summary judgment has been entered. *Landers v. Equity Property & Development*, 321 Ill. App. 3d 57, 65-66 (2001). Further, a reviewing court will not supplement the record on appeal with the documents attached to the appellant's brief on appeal as an appendix, where there is no stipulation between the parties to supplement the record and there was no motion in the reviewing court to supplement the record with the material. *McCarty v. Weatherford*, 362 Ill. App. 3d 308, 311 (2005). Skokie and Rosen's failure to remove the snow and ice mounds from the rear entrance sidewalk does not amount to reckless disregard for Tamara's safety. Therefore, Skokie and Rosen's conduct was not willful and wanton. We hold that the trial court did not err in finding that the Act barred Tamara's negligence claim against Skokie and Rosen.

¶ 17    We next examine Tamara's argument that the trial court erred in finding that Skokie and Rosen did not violate the Skokie municipal ordinances and that the ordinances are inapplicable in this case. "Municipal ordinances are interpreted under the rules governing statutory interpretation." *DTCT, Inc. v. City of Chicago Department of Revenue*, 407 Ill. App. 3d 945, 949, 944 N.E.2d 449, 453 (2011). The interpretation of an ordinance is a question of law and the reviewing court applies the *de novo* standard of review. *Id*. at 948, 944 N.E.2d at 452. The court must give effect to the intent of the municipality by first interpreting the plain language of the ordinance. *Id*. at 949, 944 N.E.2d at 449. The reviewing court will not resort to extrinsic aids of construction if the language is clear and unambiguous. *Id*.

¶ 18    There are multiple provisions in the Skokie Code of Ordinances that are at issue in this case. The Skokie obstructions ordinance states:

"Sec. 90-49. Obstructions Generally.

It shall be unlawful for any person to erect or maintain any obstruction in any street, sidewalk, alley or public way so as to impede or prevent the free and unrestricted movement of vehicular or pedestrian traffic, except as is permitted by this article or any other ordinance of the Village." Skokie Code of Ordinances § 90-49 (2002).

The Skokie snow removal and disposal ordinance states:

"Sec. 90-51. Snow removal and disposal.

It shall be unlawful for any person to throw, dump or deposit an accumulation of snow or ice upon any public way. All persons in control of property located in any business zoned district fronting or abutting paved sidewalks shall remove the snow and ice from the portions so abutting or, if the snow and ice is too hard for removal, shall cover it with abrasive materials within 24 hours after a snowfall or freezing precipitation." Skokie Code of Ordinances § 90-51 (2002).

The Skokie Code of Ordinances defines the term "public way" as:

"Sec. 106-31. Definitions.
***

*Public way* means any sidewalk, alley street or other public thoroughfare open to the use of the public, as a matter of right, for purposes of travel." Skokie Code of Ordinances § 106-31 (2002).

The Skokie Code of Ordinances defines the term "sidewalk" as:

"Sec. 90-31. Definitions.
***

*Sidewalk* means that portion of a street that is intended for pedestrian travel and is situated between the curblines or the lateral outside lines of the street and the adjacent property lines, except that portion thereof defined in this section as a parkway, carriage walk, service walk or driveway." Skokie Code of Ordinances § 90-31 (2002).

The Skokie Code of Ordinances defines the term "service walk" as:

"Sec. 90-31. Definitions.
***

*Service walk* means that portion of the street which is intended for pedestrian travel to and from the sidewalk to the adjacent property or to and from the street to the sidewalk." Skokie Code of Ordinances § 90-31 (2002).

¶ 19    Both parties make arguments regarding the way this court should interpret the provisions mentioned above; however, we use the plain language of each ordinance to guide our interpretation. For the purpose of clarity, we will discuss the Skokie snow removal and disposal ordinance first. As previously discussed, the trial court found that the rear entrance sidewalk was located entirely on Skokie and Rosen's property and could not be considered a "public way." Thus, the trial court found that the snow removal and disposal ordinance was

inapplicable in this case. We agree with this reasoning and find the plain language of the definitions provision to be instructive. According to the Skokie Code of Ordinances, in order for an area to be considered a "public way" it must be "open to the use of the public, *as a matter of right*, for purposes of travel." (Emphasis added.) Skokie Code of Ordinances § 06-31 (2002). In this case, the rear entrance sidewalk is property that is wholly owned by Skokie and Rosen. The public has no right to travel on this property. Tamara argues that the lack of signs, barriers or gates between the rear entrance sidewalk and Lee Street sidewalk made it clear that the owners intended the rear entrance sidewalk to be for the public's unlimited use. However, it was completely within Skokie and Rosen's right to put up a gate or other barrier between their property and the Lee Street sidewalk if they wanted. The fact that they chose not to do so does not change the designation of their property from private to public. The rear entrance sidewalk remains private property regardless of its open appearance, and the public does not have a right to use it. The rear entrance sidewalk is not a "public way." Therefore, the Snow Removal and Disposal ordinance is inapplicable in this case.

¶ 20    Tamara further argues that the Skokie Obstructions ordinance applies in this case because the rear entrance sidewalk meets the definition of "sidewalk" as prescribed by the Skokie Code of Ordinances. Skokie and Rosen argue that the rear entrance sidewalk actually meets the definition of a "service walk" as prescribed by the Skokie Code of Ordinances. We agree with Skokie and Rosen's interpretation and look to the plain language of the definitions provisions for guidance. Section 90-31 defines a "sidewalk" as the portion of the street between the curblines and adjacent property lines, excluding parkways, carriage walks, service walks or driveways. Skokie Code of Ordinances § 90-31 (2002). In this case, the rear entrance sidewalk is not in between the curblines and the adjacent property lines. It is entirely on the property belonging to Skokie and Rosen. In order for the rear entrance sidewalk to be considered a "sidewalk" for the purposes of the Skokie Code of Ordinances, it would have to be outside the private property line. The rear entrance sidewalk clearly fails to meet this definition.

¶ 21    On the other hand, section 90-31 defines a "service walk" as "that portion of the street which is intended for pedestrian travel *to and from* the sidewalk to the adjacent property or to and from the street to the sidewalk." (Emphasis added.) Skokie Code of Ordinances § 90-31 (2002). The phrase "to and from" means that the definition applies to areas that reach *from* the sidewalk *to* the adjacent property, and areas that reach *to* the sidewalk *from* the adjacent property. In this case, the rear entrance sidewalk clearly reaches from Skokie and Rosen's property to the Lee Street sidewalk. Therefore, it would be considered a "service walk" by definition in the Skokie Code of Ordinances. We note the possibility for confusion as the walkway identified as the "rear entrance sidewalk" is often referred to as a "sidewalk." However, this does not change its designation for the purposes of the Skokie Code of Ordinances. The Skokie Obstructions ordinance only imposes liability on persons that erect or maintain obstructions on streets, sidewalks, alleys, or public ways. Skokie Code of Ordinances § 90-49 (2002). Further, section 90-31 specifically excludes service walks from its definition of "sidewalk." Therefore, the Skokie Obstructions ordinance is inapplicable in this case. We hold that the trial court did not err in finding that the Skokie municipal ordinances were inapplicable in this case and that Skokie and Rosen did not violate the

ordinances.

¶ 22      Tamara also argues that the trial court erred in finding that the Act preempted the Skokie municipal ordinances. Although Tamara presents a coherent and persuasive argument, it is immaterial because we have already decided that the Skokie municipal ordinances do not apply in this case and were not violated. Because the Skokie municipal ordinances are inapplicable in this case, there is no conflict to resolve between the ordinances and the Act. Therefore, this argument has no effect on the resolution of this case and we do not consider it. The parties also make arguments regarding whether Canopy and Maintenance Hot Line were agents of Skokie and Rosen. Skokie and Rosen argue that Canopy and Maintenance Hot Line were not their agents and, therefore, they cannot be held liable for the actions of Canopy and Maintenance Hot Line. Tamara argues that Canopy and Maintenance Hot Line were agents of Skokie and Rosen. Also, Tamara argues that even if there was no agency relationship, Skokie and Rosen could be liable for Canopy and Maintenance Hot Line's actions through their relationship as independent contractors. This issue is also immaterial because we have already decided that Skokie and Rosen are immune from liability under the Act. Likewise, this issue has no effect on the outcome of this case and will not be considered.

¶ 23      For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 24      Affirmed.