FILTERTEK, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF REV-ENUE, Defendant-Appellee.

Second District No. 2—88—1062

Opinion filed July 20, 1989.—Rehearing denied August 21, 1989.

Alan B. Roth, of Wildman, Harrold, Allen & Dixon, of Chicago (Robert M. Gunn, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff appeals from the order entered by the circuit court of McHenry County on September 29, 1988. That order affirmed the findings and decision of the Department of Revenue, which had proposed a tax deficiency in the amount of $77,649 for calendar year 1980 and $90,232 for calendar year 1981, or a total of $167,881, together with interest. The court held that the Department's decision was factual in nature and should be upheld unless it were shown to be against the manifest weight of the evidence. We affirm.

Plaintiff, Filtertek, Inc. (Filtertek), is a Delaware corporation with its offices and manufacturing plant located in Hebron, Illinois. Filtertek is engaged in the manufacture and sale of plastic molded filters, which have medical, automotive, and industrial uses. In 1980 and 1981, approximately 180 people were employed at the Hebron facility, with 92% of the employees engaged in manufacturing. A small sales force also operates out of this facility.

Filtertek de Puerto Rico (Puerto Rico) is also engaged in the manufacture and sale of filters to customers in the United States and Puerto Rico. It too employed approximately 180 people in two plants located in Puerto Rico, with 92% of the employees engaged in manufacturing. Until 1975, Puerto Rico was a subsidiary corporation of Filtertek. At that time, Puerto Rico was "spun off" and became a Delaware corporation with its principal offices located in Patillas, Commonwealth of Puerto Rico.

In 1980 and 1981, over 50% of the Class A stock of both Filtertek and Puerto Rico was owned by Hayden Leason, an individual who resided in Puerto Rico. Leason was chairman of the respective boards of directors. The two firms also shared many common directors and officers. At the time in question, all members of the board of direc-

tors for Puerto Rico were on Filtertek's board. In addition to sharing corporate governance, the two firms engaged in many business transactions. Filtertek and Puerto Rico, along with several European manufacturers owned by Filtertek, engaged in interest-bearing intercompany loans, as well as the intercompany sale of manufactured products, equipment, and services.

Filtertek purchased approximately 90% of the products manufactured by Puerto Rico. Such purchases were pursuant to a contract between the two companies which specified that Filtertek would use its best efforts to distribute Puerto Rico's products. Title passed to Filtertek upon shipment and these purchases were at "arm's-length" prices. Multiple products would be shipped to Hebron from Puerto Rico in one sea container. Thereafter, Filtertek would unpackage the goods, repackage them and sell and ship them to customers, 91% to 93% of whom were out of State. Filtertek was then responsible for the billing and collection on these sales. Puerto Rico's accounts receivable from Filtertek on these purchases remained unpaid for periods in excess of six months without an interest charge, and Filtertek was free to use funds for payment as it deemed appropriate. The Puerto Rican products usually were stored and shipped out from Hebron within the next one to two days. However, if only partial orders were received, Filtertek would hold the product until a complete order for the customer could be filled.

During the years 1980 and 1981, Filtertek prepared and filed Illinois income tax returns with defendant Department of Revenue (Department), allocating its entire income to Illinois. Pursuant to an extension until June 30, 1981, Filtertek timely filed its Illinois income tax return for the calendar year 1980 on May 29, 1981. On April 30, 1984, the Department requested that Filtertek execute an agreement to extend the statute of limitations for assessments for tax year 1980 which was due to expire on May 29, 1984. The agreement was executed by Mr. Soltwedel, Filtertek's treasurer, who received a photocopy of the agreement. The three executed originals were retained by the Department's auditor and were executed by the Department later that day. None of the three executed originals was sent to Filtertek.

A Department of Revenue audit and subsequent notice of deficiency issued October 8, 1984, redetermined Filtertek's Illinois tax liability. The Department determined that Filtertek, its subsidiaries, and Puerto Rico were all members of a "unitary business" requiring application of combined apportionment under section 304(a) of the Illinois Income Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 3—304(a)). In calculating the tax owed, the Department made a unitary business income

adjustment (a computation based upon the total income of the corporations comprising the unitary business). The Department further determined the percentage of income that should be apportioned to Illinois based on the statutory three-factor formula. The Department apportioned to Illinois and found subject to taxation approximately 77% of the combined business income in 1980 and approximately 64% of the combined business income in 1981. The tax computation resulted in Illinois tax deficiencies of $77,649 in 1980, and $90,232 in 1981, respectively.

A hearing with stipulated facts and oral testimony was conducted before an administrative law judge. The Department issued a notice of decision on February 25, 1987, upholding the deficiency determination. A limited rehearing was granted on the sales factor calculation and, upon further stipulation of facts, the deficiency notice was further sustained by a decision dated and mailed August 31, 1987.

On October 2, 1987, Filtertek initiated the instant action by filing a complaint for administrative review in McHenry County. On September 29, 1988, the circuit court entered an order affirming the Department's administrative decision, finding that it was not against the manifest weight of the evidence. Filtertek appeals from this decision.

The first issue presented is whether the hearing officer's finding that Filtertek was part of a unitary business group was against the manifest weight of the evidence. We determine that it was not.

■■ ■ The term "unitary business group" is used to describe "a group of functionally integrated corporate units which are so interrelated and interdependent that it becomes relatively impossible for one State to determine the net income generated by a particular corporation's activities within the State and therefore allocable to that State for purposes of taxation." (*Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, 116.) The existence of a unitary business group is strongly indicated when a single entity carries on an integrated business in several jurisdictions, with each operation contributing income to the others through centralized management, accumulated know-how and economies of scale. (See *Citizens Utilities Co. v. Department of Revenue* (1986), 111 Ill. 2d 32.) The finding of a unitary business group is necessary before a State can apportion the income of two or more corporations for tax purposes. See *Container Corp. of America v. Franchise Tax Board* (1983), 463 U.S. 159, 77 L. Ed. 2d 545, 103 S. Ct. 2933.

■■ ■ Plaintiff admits that an integrated business with common control and common ownership exists in this case. Plaintiff's only contention is that, at the time in question, an individual's ownership of

the companies was inadequate for finding a unitary business group. Plaintiff is correct in stating that, until the enactment of section 1501(a)(28) of the Illinois Income Tax Act (Act) (Ill. Rev. Stat. 1983, ch. 120, par. 15—1501(a)(28)) (now Ill. Rev. Stat. 1987, ch. 120, par. 15—1501(a)(27)), Illinois had no statutory definition of what constituted a unitary business and common ownership. However, the Illinois Supreme Court applied "unitary business group" to "a corporation which has subsidiaries *or other associated corporations* in other States or countries." (Emphasis added.) (*Caterpillar*, 84 Ill. 2d at 116.) Clearly, the court did not intend for the unitary business group designation to apply only to corporations in a parent-subsidiary relationship. The language used by the court does not preclude finding a unitary business group when the corporations are owned by an individual. The relationship between Filtertek, its subsidiaries, and Puerto Rico comports with the concept of "associated corporations" set out by the court. Based on plaintiff's admissions and the language of the *Caterpillar* court, we cannot say that finding plaintiff to have been part of a unitary business group was against the manifest weight of the evidence.

The next issue presented is the proper method of income allocation once a unitary business group has been found. Plaintiff contends that the three-factor test prescribed in section 304 of the Act does not fairly represent its business activity in Illinois. Therefore, it is eligible for alternative allocation under the Act. We disagree.

■ Section 304(a) of the Act prescribes combined apportionment of unitary business group income. (Ill. Rev. Stat. 1979, ch. 120, par. 3—304(a).) This apportionment method determines the percentage of income attributable to and taxable by Illinois by calculating three factors: Illinois property in proportion to all group property, Illinois payroll in proportion to all group payroll, and Illinois sales in proportion to all group sales. The average of these factors represents that portion of the income taxable by Illinois. This method is the "presumptively proper method of apportionment; [the] formula supplies the 'benchmark' for a fair and consistent apportionment formula." *Citizens Utilities Co.*, 111 Ill. 2d at 52.

■ Filtertek contends that the allocation of income arrived at by using the statutory three-factor test does not fairly represent the extent of its business activities in Illinois and that it is eligible for a separate accounting as an alternative allocation under section 304(e)(1) of the Act (Ill. Rev. Stat. 1979, ch. 120, par. 3—304(e)(1)). Filtertek points out that its income in Illinois under the three-factor formula increased 561% in 1980 and 807% in 1981 over its original reported in-

come. However, "bare percentages without explanation are not helpful" to a determination of this issue. Filtertek must show why the application of the formula to its business yields a distorted result. *Citizens Utilities Co.*, 111 Ill. 2d at 53.

Filtertek initially disputes the standard to be applied when seeking relief under section 304(e)(1) of the Act. The hearing officer applied the standard set out in the regulations under section 304(e). (See 86 Ill. Adm. Code §100.3700(a)(4) (1985).) Under this regulation, relief is only granted when the taxpayer demonstrates by clear and cogent evidence that apportionment operates unreasonably and arbitrarily in attributing to Illinois a percentage of income which is out of all proportion to the business transacted in Illinois. While Filtertek is correct in pointing out that this regulation became effective after the period involved here, the regulation merely codified the standard set by the Supreme Court. "The company had the 'distinct burden of showing by "clear and cogent evidence" that it [formula apportionment] results in extraterritorial values being taxed.' " (*Exxon Corp. v. Wisconsin Department of Revenue* (1980), 447 U.S. 207, 221, 65 L. Ed. 2d 66, 80, 100 S. Ct. 2109, 2119, quoting *Butler Brothers v. McColgan* (1942), 315 U.S. 501, 507, 86 L. Ed. 991, 996, 62 S. Ct. 701, 704.) The standard was set but not codified during the tax years in question. Clear and cogent evidence is required for relief under section 304 of the Act.

The hearing officer found that Filtertek did not show by clear and cogent evidence, nor even by a preponderance of the evidence, that application of the three-factor formula did not fairly represent the extent of its business activity in Illinois. The record reveals that the Illinois activities of Filtertek included sales and marketing, research and development, contracting, some manufacturing, shipment of all its products and 90% of Puerto Rico's products, billing and collection on all these products, quality control, and central management. The only activity carried on in Puerto Rico was the balance of the manufacturing. Filtertek's contention that lower payroll and property costs in Puerto Rico distort the formula apportionment is unconvincing. Since a unitary business group has been found, payroll and other factors from Filtertek may have indirectly contributed to the production in Puerto Rico. The fact that this possibility may not be reflected in Filtertek's accounting does not by itself make formula apportionment inapplicable. See *Container Corp.*, 463 U.S. at 182, 77 L. Ed. 2d at 564, 103 S. Ct. at 2949.

In the face of such extensive business activity in Illinois, we cannot say that Filtertek's share of the unitary group's income was

grossly distorted. Since Filtertek's Illinois business activity was not shown by clear and cogent evidence to be unfairly represented by application of the three-factor formula, Filtertek is not eligible for alternative allocation under section 304(e) of the Act.

■ Filtertek also contends that, in applying the three-factor test to the unitary group income, the Illinois sales are overstated by the inclusion of sales receipts from products manufactured in Puerto Rico, sold to Filtertek, and resold to out-of-State customers.

The hearing officer found that the sales between Puerto Rico and Filtertek were properly excluded from the denominator (all group sales) of the sales factor. However, the subsequent sales by Filtertek were included in the numerator (Illinois sales) of the equation. According to the formula, a taxpayer's sales are to be placed in the numerator under two circumstances. First, sales made to Illinois customers are considered within the State. (Ill. Rev. Stat. 1979, ch. 120, par. 3—304(a)(3)(B)(i).) Sales are also attributable to Illinois if "[t]he property is shipped from an office, store, warehouse, factory or other place of storage in this State and *** the person is not taxable in the state of the purchaser." Ill. Rev. Stat. 1979, ch. 120, par. 3—304(a)(3)(B)(ii).

Filtertek characterizes the questioned transactions as sales by Puerto Rico, which are merely transshipped through Illinois to destinations outside Illinois. Puerto Rican products were usually stored in Illinois one or two days before shipment to the customer. If an order sent from Puerto Rico was only partial, Filtertek would store the product until a complete order for the customer could be filled.

The hearing officer's findings do not support this characterization. Filtertek purchased and held title to the products from Puerto Rico. Filtertek was also responsible for reselling the product to out-of-State customers and for storing the product until delivery to the customers. Finally, Filtertek assumed responsibility for delivery or quality problems and for billing and collection functions. In short, the transactions involved more than "temporary ownership" of the products by Filtertek. The sales were actually made by Filtertek.

■ The sales being attributable to Filtertek, the next step is to determine whether or not the sales can be taxed by Illinois. Under section 304(a)(3)(B)(ii) of the Act, two elements must be proved: (1) the property was shipped from some place of storage in Illinois; and (2) the person (i.e., Filtertek) was not taxable in the State of the purchaser. Ill. Rev. Stat. 1979, ch. 120, par. 3—304(a)(3)(B)(ii).

Although Filtertek stresses the almost immediate reshipment of the products, the length of time spent in storage is unimportant to our analysis. Nowhere does the statute require a minimum storage

time. All that is required is some time spent in storage at an Illinois facility. The hearing officer's finding that the goods were held in storage, at least for short periods of time, at the Filtertek facility is not against the manifest weight of the evidence and will not be disturbed.

The hearing officer also found that Filtertek was not taxed in the destination States of the products. Filtertek presented no evidence to the contrary. In fact, Filtertek's tax returns for 1980 and 1981 showed 100% of the sales in issue taxed in Illinois. In the absence of any contrary evidence, the hearing officer's finding cannot be against the manifest weight of the evidence. Since both requirements under section 304(a)(3)(B)(ii) were fulfilled, the sales were properly added into the sales factor numerator. These findings will not be disturbed.

Filtertek finally contends that no deficiency should be assessed for 1980 because the statute of limitations had run before notice of deficiency was issued by the Department. Filtertek argues that the agreement to extend the limitations period, signed by both parties, was invalid because of a lack of communication of acceptance by the Department. We disagree.

The Department has three years from the date of a taxpayer's filing to issue a notice of deficiency for the tax year. (Ill. Rev. Stat. 1979, ch. 120, par. 9—905(a)(1).) However, this period can be extended by a written agreement between the taxpayer and the Department. (Ill. Rev. Stat. 1979, ch. 120, par. 9—905(f).) On April 30, 1984, Filtertek and the Department signed such an agreement. However, the Department, contrary to its own regulations, did not mail to Filtertek an executed duplicate of the agreement. Filtertek contends that this failure to communicate acceptance makes the agreement invalid. Consequently, the notice of deficiency, which was issued after the statute of limitations would have run, should not be assessed against Filtertek.

We agree with Filtertek that this is analogous to a common-law contract issue. When a statute is enacted which covers an area previously covered by the common law, the statute will be construed as adopting common law, absent clear and specific language showing that the legislature intended a change in the common law. (*Berlin v. Nathan* (1978), 64 Ill. App. 3d 940, 956.) Section 905(f) of the Act, which provides for the extension agreement, contains no such language of legislative intent to change the common-law rules of contract construction. Ill. Rev. Stat. 1979, ch. 120, par. 9—905(f).

Filtertek contends that an agreement was never reached because the Department never communicated acceptance of Filtertek's offer to extend. The facts of this case do not support Filtertek's de-

piction of the transaction. As Filtertek admits in its brief, the Department requested that Filtertek execute the extension agreement. This fact casts the Department in the role of the offerer, not that of the offeree, as Filtertek contends. This being the case, Filtertek was required to communicate acceptance of the Department's offer. Filtertek did communicate acceptance by executing and returning the agreement to the Department. At that point, the transaction was completed, and no further action by the Department was required. The Department made an offer, and Filtertek communicated acceptance of the offer. A binding agreement was created.

Filtertek's reliance on the Department's regulation is also misplaced in light of the facts. The regulation provides in part that "[a]fter proper execution and submission by the taxpayer, the consent will become *effective upon acceptance and authorized execution on behalf of the Department,* after which one executed duplicate copy will be mailed to the taxpayer." (Emphasis added.) (86 Ill. Adm. Code §100.9070(f) (1985).) This regulation contemplates an offer by the taxpayer and acceptance by the Department and is therefore inapplicable to this transaction.

A meeting of the minds is evident here. There has been an offer by the Department, an acceptance by Filtertek, and a communication of the acceptance to the Department. This is adequate to find a binding agreement. Therefore, we find that the period in which the Department could issue a notice of deficiency was properly extended and that the notice was issued on a timely basis.

For the reasons stated above, we affirm the judgment of the circuit court of McHenry County.

Affirmed.

NASH and REINHARD, JJ., concur.