SIXTH DIVISION
February 18, 2011

Nos. 1-09-2272, 1-09-2274 and 1-09-2275, Consolidated

| | |
|---|---|
| DTCT, INC., TAYLOR MCD, INC., and BDJK TAYLOR, | ) Appeal from |
| INC.; LOFTON AND LOFTON MANAGEMENT, INC.; | ) the Circuit Court |
| V. OVIEDO, INC., MIDAN INC., and LOTE, INC., | ) of Cook County |
| | ) |
|     Plaintiffs-Appellants, | ) |
| v. | ) No. 08 L 51004 |
| | )    08 L 51005 |
| THE CITY OF CHICAGO DEPARTMENT OF | )    08 L51156 |
| REVENUE, and BEA REYNA-HICKEY, in her Official | ) |
| Capacity as Director of the Chicago Department of | ) |
| Revenue, | ) Honorable |
| | ) Lawrence O'Gara, |
|     Defendants-Appellees. | ) Judge Presiding. |

JUSTICE CAHILL delivered the judgment of the court, with opinion.
Justice McBride concurred in the judgment and opinion.
Presiding Justice Garcia dissented, with opinion.

This consolidated appeal arises from three actions for administrative review of a tax

assessment imposed by the City of Chicago department of revenue (Department) against a group

of corporations under the employer's expense tax (employer's tax) (Chicago Municipal Code §3-

20-030 (eff. July 1, 1995)). In each case, the assessment was based on the Department's finding

that, under the language of the tax ordinance, it could combine the employees of commonly

owned though separately incorporated McDonald's restaurants. The tax applies only to

businesses with 50 or more full-time employees and charges the employer $4 per month for each

1-09-2272, 1-09-2274 & 1-09-2275, Cons.

such employee.  The City of Chicago department of administrative hearings upheld the assessment, finding that the corporations were properly combined.  The circuit court affirmed that decision.  Plaintiffs appeal, contending the ordinance does not permit the corporations to be combined to calculate the tax.  We affirm.

Section 3-20-030(A) of the Code imposes a tax on:

"every employer who, in connection with the employer's business, engages, hires, employs, or contracts with 50 or more individuals as commission merchants and full-time employees, or any combination thereof, to perform work or render services in whole or in part within the city of Chicago."  Chicago Municipal Code §3-20-030(A) (eff. July 1, 1995).

The ordinance defines  "employer" as "any person that employs one or more employees performing services in whole or in part within the city of Chicago."  Chicago Municipal Code §3-20-020(I) (eff. July 1, 1995).  The term "business" is defined in the ordinance as:

"any activity, enterprise, profession, trade or undertaking of any nature conducted or engaged in, or ordinarily conducted or engaged in, with the object of gain, benefit or advantages, whether direct or indirect, to the employer or to another or others.  The term shall include entities which are subsidiary or independent, conducting operations for the benefit of others and at no benefit to themselves, nonprofit businesses and trade associations."  Chicago Municipal Code §3-20-020(B) (eff July 1, 1995).

On February 7, 2005, the Department issued a tax assessment against three separate

2

corporations, DTCT, Inc., Taylor MCD, Inc., and BDJK Taylor, Inc. (collectively DTCT), each operating a McDonald's restaurant in different locations. The corporations are wholly owned by Derrick and Cheryl Taylor. The Taylors control every aspect of the operation of each restaurant, including the payment of employees' wages. The tax assessment showed DTCT owed $17,411.57 in tax, penalties and interest for failure to pay the employer's tax for the period of October 2001 through June 2004. The assessment was based on the Department's finding that under the language of section 3-20-030(A) of the Chicago Municipal Code (Code) (Chicago Municipal Code §3-20-030(A) (eff. July 1, 1995)), it could combine employees working at the three franchises.

On the same date, the Department made a similar finding with respect to Lofton & Lofton Management, Inc., Lofton & Lofton Management II, Inc., Lofton Management Four, Inc., and Lofton & Lofton Management V, Inc. (collectively Lofton), each of which also operates a McDonald's restaurant in different locations. The corporations are wholly owned by Ronnie and Lillian Lofton. The Loftons control every significant aspect of the operation of each restaurant, including the payment of employees' wages. The assessment alleged that Lofton owed $44,934.66 in tax, penalties and interest for failure to pay the tax for the period of July 1997 though June 2004.

On April 4, 2005, the Department made a similar finding with respect to V. Oviedo, Inc., Midan, Inc., and Lote, Inc. (collectively Oviedo), each of which also operates a McDonald's restaurant in different locations. The corporations are wholly owned by Virginia Ojeda and her son. Ojeda controls every significant aspect of the operation of each of the restaurants, including

3

the payment of employees' wages. The assessment alleged that Oviedo owed $38,856.43 in tax, penalties and interest for failure to pay the employer's tax for the period of January 1999 through June 2004.

DTCT, Lofton and Oviedo (collectively plaintiffs) separately filed protests to the assessments with the City of Chicago department of administrative hearings. After hearings, the administrative law judge (ALJ) entered a written order in each case, finding that consolidation was proper under the ordinance. The ALJ rejected the argument that the ordinance use of the word "employer" in the singular showed a legislative intent that the corporations could not be combined. The ALJ relied instead on the term "business" used and defined in the ordinance as "entities which are subsidiary or independent, conducting operations for the benefit of others and at no benefit to themselves" (Chicago Municipal Code §3-20-020(B) (eff. July 1, 1995)). The ALJ then concluded that because the corporations were a "unitary business group," under the Department's 2005 Employer's Expense Tax Ruling No. 2 (2005 ruling), they were properly consolidated. The ALJ rejected the argument that a 1997 information bulletin issued by the Department stated that the corporations could not be consolidated. The ALJ upheld the assessment against DTCT and Lofton and corrected Oviedo's liability to $13,428.

DTCT, Lofton and Oviedo filed separate complaints for administrative review in the circuit court. Following hearings, the court affirmed the decisions of the ALJ. DTCT (No. 1-09-2272), Lofton (No. 1-09-2274) and Oviedo (No. 1-09-2275) separately appealed and we consolidated the actions for review.

Under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2004)), we

4

1-09-2272, 1-09-2274 & 1-09-2275, Cons.

review the administrative decision and not the circuit court's ruling. *West Belmont, L.L.C. v. City of Chicago*, 349 Ill. App. 3d 46, 49, 811 N.E.2d 220 (2004). Because the Department's interpretation of a municipal ordinance is a question of law, our review is *de novo*. *West Belmont*, 349 Ill. App. 3d at 49. A taxpayer bears the burden of proving it is entitled to an exemption from a tax. *West Belmont*, 349 Ill. App. 3d at 49.

Plaintiffs contend that the plain language of section 3-20-030(A) of the Code (Chicago Municipal Code §3-20-030(A) (eff. July 1, 1995)) prohibits consolidation of separate corporate entities. They claim that the ordinance identifies "employer" in the singular, evidence that the city did not intend to combine employers to reach the 50-employee threshold. Plaintiffs maintain that the ALJ erred in relying on the term "business" as used and defined in the ordinance because the term is overly broad and leads to absurd results. Plaintiffs argue that "any businesses that enter into mutually beneficial contracts would be considered to be acting in connection with each other" and would be subject to the tax.

The Department responds that when "employer" and "business" are read together independent entities may be consolidated to calculate the employer's tax. The Department argues that the definition of "business" in the ordinance, which includes "subsidiary or independent" entities, justifies this interpretation. The Department maintains that plaintiff's reading would allow large employers to circumvent the tax through the creation of subsidiaries.

Municipal ordinances are interpreted under the rules governing statutory interpretation. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 7, 919 N.E.2d 300 (2009). The fundamental rule is to give effect to the intent of the legislature. *Landis*, 235 Ill. 2d at 6. In interpreting a municipal

5

1-09-2272, 1-09-2274 & 1-09-2275, Cons.

ordinance, we give effect to the intent of the municipality as shown by the plain and ordinary language of the ordinance. *Antler v. Classic Residence Management Ltd. Partnership*, 315 Ill. App. 3d 259, 265, 733 N.E.2d 393 (2000); *Monat v. County of Cook*, 322 Ill. App. 3d 499, 506, 750 N.E.2d 260 (2001). If the language in the ordinance is clear and unambiguous we do not resort to extrinsic aids of construction. *Landis*, 235 Ill. 2d at 6-7.

We believe the plain language of section 3-20-030(A) of the Code is compatible with an intent to tax "every employer" who has 50 or more full-time employees in the employer's "business." An "employer" is "any person that employs one or more employees performing services in whole or in part within the city of Chicago." Chicago Municipal Code §3-20-020(I) (eff. July 1, 1995). A "person" includes a corporation. See Chicago Municipal Code §1-4-090(e) (amend. Nov. 13, 2007). The term "business" is broadly defined in the ordinance as "any activity, enterprise, profession, trade or undertaking of any nature conducted *** with the object of gain *** whether direct or indirect, to the employer." Chicago Municipal Code §3-20-020(B) (eff. July 1, 1995). A "business," the key to this analysis, includes "entities which are subsidiary or independent." Chicago Municipal Code §3-20-020(B) (eff. July 1, 1995). Similarly, an "employee" is defined as "any individual" who works for the employer in "any activity *** with the object of gain, benefit, or advantages, whether direct or indirect, to the taxpayer." Chicago Municipal Code §3-20-020(G) (eff. July 1, 1995). Given the definition of "business" in the ordinance, and that an "employee" may provide a "direct or indirect" benefit to the taxpayer, we believe the city intended the employer's tax to apply to plaintiffs' business arrangements.

We are unpersuaded by plaintiffs' argument that because the word "employer" in the

6

ordinance is used in the singular, the city did not intend to combine multiple corporations in calculating the tax. The Code includes the universal rule of statutory construction: "[w]henever any words in any section of this Code import the plural number, the singular shall be deemed to be included, and whenever the singular shall be used, it shall be deemed to include the plural." Chicago Municipal Code §1-4-100 (added June 27, 1990).

Plaintiffs alternatively assert a more persuasive argument: that the ALJ erred in upholding the tax assessment because the officer improperly found they satisfied the test for a "unitary business group" as set out in the 2005 ruling. Plaintiffs claim the determination of whether separate corporate entities may be consolidated to calculate the tax cannot be based on the concept of a "unitary business group" because the 2005 ruling was not in effect for the tax period at issue here. Plaintiffs maintain that this court should instead consider a 1997 information bulletin issued by the Department, interpreting the employer's tax ordinance to not require consolidation of separate corporate entities. That bulletin provides the following guidance:

"If I have more than one location do I file a separate [Employer's] Expense Tax return for each location?

No, you should include on your return all the individuals who perform any service, of whatever nature for your company, or for whom you have control of the payment of their wages.

Example 1: ABC Company has 60 employees located in their 3 Chicago offices. Each office has 20 employees which consist of one office manager and 19 staff personnel. Each office manager is responsible for the services performed by

the personnel in their respective location. ABC Company is responsible for payment of wages to all the employees. All of the employees earned or accrued over $900 during the calendar quarter. All of the employees worked 50% or more of the time in that calendar quarter within the city of Chicago. ABC Company would file one [Employer's] Expense Tax return for the 60 employees located in their 3 Chicago officers because they had control of the payment of the wages of all 60 employees.

Example 2: XYC Corp. and ABC Inc. are affiliated companies. XYC Corp. has 100 employees and is responsible for the work performed by their employees as well as the payment of their wages. ABC Inc. has 150 employees and is responsible for the work performed by their employees as well as the payment of their wages. [XYC] Corp. and ABC Inc. should each file an [Employer's] Expense Tax return because they are two separate entities which control the work performed by their employees and each has control of the payment of their employees wages. If you are unsure if your company should file a consolidated return please request an opinion from our Law Department. A detailed explanation of the relationship and structure of your company as well as any supporting documents should be included with your request."

After plaintiffs' audit, the Department issued the 2005 ruling, which introduced the concept of a "unitary business group." The ruling requires that a taxpayer doing business as a "unitary business group" must combine the persons employed by the members of the group.

8

1-09-2272, 1-09-2274 & 1-09-2275, Cons.

Section 5 of the ruling defines the term "unitary business group" as:

> "a group of persons related through common ownership or control, whose
> business activities are in the same general line (such as *** food service ***), and
> whose members are functionally integrated through the exercise of centralized
> management (where, for example, authority over such matter as purchasing,
> financing, tax compliance, product line, personnel, marketing and/or capital
> investment is not left to each member). Common ownership in the case of
> corporations is the direct or indirect control or ownership of more than 50% of the
> outstanding voting stock of the persons carrying on unitary business activity."
> Chicago Department of Revenue Employer's Expense Tax Ruling No. 2, §5 (eff.
> Sept. 15, 2005).
>
> Importantly, section 7 of the ruling states that "[t]his ruling is intended to clarify rather

than change existing law." Chicago Department of Revenue Employer's Expense Tax Ruling No.
2, §7 (eff. Sept. 15, 2005).

Plaintiffs do not dispute that they are each a unitary business group as that term is defined
in the 2005 ruling. Rather, plaintiffs argue that the 1997 information bulletin, which was the only
pronouncement on consolidation available to them during their audit, supports their position that
separate entities should not be consolidated. They claim that example 2 in the information bulletin
shows that "regardless how entities are affiliated, if they in fact are separate and pay and control
their own employees, they are not to be consolidated."

We do not believe that either example in the 1997 information bulletin is analogous to

9

plaintiffs' business arrangements. Example 1 involves a single corporation with multiple locations. Example 2 involves two affiliated corporations but under separate control with each corporation paying its own employees' wages. Neither example fits the case here. Plaintiffs' business arrangements involve separately incorporated but affiliated corporations under the same ownership, control and central management. The owner is responsible for paying the employees' wages at the different locations. The record shows the corporate entities comprising DTCT, Lofton, and Oviedo, respectively, are not separate nor do they pay their own employees. The record shows Derrick and Cheryl Taylor, as owners of DTCT, control every aspect of the operation of each of the three McDonald's restaurants that make up DTCT, including the payment of wages. Similarly, Ronnie and Lilian Lofton, as owners of Lofton, control every significant aspect of the operation of each of the four McDonald's restaurants that make up Lofton, including the payment of wages. The same holds true for Virginia Ojeda as the owner of Oviedo.

We are unpersuaded by plaintiffs' argument that the Department's 2005 ruling is a "completely new taxation method" beyond the scope of the Department's authority to enact in a ruling without the approval of the city council. The Department is "empowered to adopt and promulgate, and to enforce, rules and regulations relating to any matter or thing pertaining to the administration" of the employer's tax ordinance. See Chicago Municipal Code §3-20-070 (2004). We give deference to the Department's interpretation of an ordinance it administers and will follow that interpretation unless it is clearly erroneous. *Katz v. City of Chicago*, 177 Ill. App. 3d 305, 311-12, 532 N.E.2d 322 (1988). Here, based on the plain language of the employer's tax

10

1-09-2272, 1-09-2274 & 1-09-2275, Cons.

ordinance, which seeks to tax "entities which are subsidiary or independent," we cannot say that the Department's ruling incorporating a "unitary business group" as one such entity is clearly erroneous.

We are also unpersuaded by plaintiffs' argument that the 2005 ruling cannot be applied retroactively because the employer's tax ordinance does not include a provision permitting retroactive application. See *Caveney v. Bower*, 207 Ill. 2d 82, 95, 797 N.E.2d 596 (2003); *Landgraf v. USI Film Products*, 511 U.S. 244, 271-72, 128 L. Ed 2d 229, 256, 114 S. Ct. 1483, 1500 (1994). Section 7 of the 2005 tax ruling provides that "[t]his ruling is intended to clarify rather than change existing law." Chicago Department of Revenue Employer's Expense Tax Ruling No. 2, §7 (eff. Sept. 15, 2005). Because the ruling did not create a new taxation method but explained how the employer's tax should be assessed it may be applied retroactively. See *West Belmont*, 349 Ill. App. 3d 46 (this court deferred to the Department's 1999 interpretation of a tax ordinance to affirm a 1998 tax assessment).

We confirm the decision and order of the ALJ.

Confirmed.

1-09-2272, 1-09-2274 & 1-09-2275, Cons.

PRESIDING JUSTICE GARCIA, dissenting:

Before the audits that gave rise to this consolidated appeal, the City of Chicago department of revenue (the Department) had never before treated the employees of distinct, but affiliated, corporate entities (owning separate McDonald franchises) as working for a single employer under the Chicago Employer's Expense Tax Ordinance (EETO) as enacted by the Chicago city council. Chicago Municipal Code §3-20-010 *et seq.* (eff. July 1, 1995). Under the EETO, an employer is required to pay the expense tax only if it has "50 or more *** full-time employees *** within the city of Chicago." Chicago Municipal Code §3-20-030(A) (eff. July 1, 1995).

Following the audits in 2004, the Department issued assessments in early 2005 against the corporate plaintiffs for unpaid EETO taxes, penalties and interest from January 1, 1999, to June 20, 2004. Liability under the EETO stems from the Department's calculations that the combined employees of the affiliated corporations met the ordinance threshold of 50.

On August 25, 2005, the Department issued "Tax Ruling No. 2," effective September 15, 2005, introducing the concept of "unitary business group," which the Department contends supports its earlier tax assessments against the corporate plaintiffs. The Department's Tax Ruling No. 2 provides in pertinent part:

"Section 4. For the purpose of calculating the 50-employee threshold contained in Section 3-20-030(A), employees will be combined if they are employed by members of a single 'unitary business group,' as that term is defined below.

12

Section 5. The term 'unitary business group' means a group of persons related through common ownership or control, whose business activities are in the same general line (such as *** food service ***), and whose members are functionally integrated through the exercise of centralized management (where, for example, authority over such matter as purchasing, financing, tax compliance, product line, personnel, marketing and/or capital investment is not left to each member). Common ownership in the case of corporations is the direct or indirect control or ownership of more than 50% of the outstanding voting stock of the persons carrying on unitary business activity.

Section 6. In accordance with Section 3-4-189 of the Code, a consolidated employer's expense tax return shall be filed on behalf of all members of the unitary business group.

Section 7. This ruling is intended to clarify rather than change existing law." Chicago Department of Revenue Employer's Expense Tax Ruling No. 2, §§4, 5, 6, 7 (eff. Sept. 15, 2005).

The majority finds it important that section 7 is included in the tax ruling. Slip op. at 9. I do as well, but for an entirely contrary reason. I find the Chicago department of revenue "doth protest too much." William Shakespeare, Hamlet, act 2, sc. 2. Unless the Department means to suggest that it has the authority to "change existing law," I find its avowal that it is *not* doing that to suggest the opposite. Tax Ruling No. 2 clarified nothing, but it changed the law under the EETO as it applied to the corporate plaintiffs before us.

13

1-09-2272, 1-09-2274 & 1-09-2275, Cons.

Notably, the Department fails to inform us how the need for "clarification" arose. What part of the EETO is so ambiguous that a "clarification" was needed? Nor does the Department inform us what triggered its decision to treat the employees of affiliated corporations operating separate McDonald franchises as all working for the same employer. Certainly the Department knows it may only adopt, promulgate, and enforce rules and regulations pertaining to the administration and enforcement of existing municipal ordinances. Chicago Municipal Code §3-4-150(A)(1) (amended May 12, 1999). It is axiomatic that the Department may not change existing law.

The plaintiffs correctly point out in their main brief that "[t]he term 'unitary business group' is a statutory term used in relation to Illinois corporate income tax since 1982." See 35 ILCS 5/1501(a) (West 2008). Its statutory origin means the term was recognized in legislation passed by the Illinois legislature. The Department makes no claim of a similar enactment by the Chicago city council. As the plaintiffs state, "This unitary business group scheme appears nowhere in Chicago's municipal ordinances."

Nor does the Department contend it relied on tax returns filed with the Illinois Department of Revenue to support its 2005 tax assessment of the corporate plaintiffs based on the Department's contention that they constitute a "unitary business group" to warrant combining the employees of affiliated corporations as working for a single employer. See *Filtertek, Inc. v. Department of Revenue*, 186 Ill. App. 3d 208, 213, 541 N.E.2d 1385 (1989) ("The finding of a unitary business group is necessary before a State may apportion the income of two or more corporations for tax purposes.").

14

Of course, there is a world of difference between the Illinois Department of Revenue's decision to apportion the income of two or more multistate corporations under the Illinois tax code and the Department's decision to combine the employees of distinct, but affiliated, corporations for the purpose of imposing the Chicago employer's expense tax. In the former situation, earned income is apportioned between states to avoid states taxing the same income. In the latter situation, no taxes would be due *unless* the employees of distinct corporate entities are combined. The Department's use of the concept "unitary business group" only serves to enlarge the definition of employer under the EETO; its aim is not to avoid duplicate taxation. See *Caterpillar Tractor Co. v. Lenckos*, 84 Ill. 2d 102, 115, 417 N.E.2d 1343 (1981) (the unitary business group concept is used in accounting methods by states "to determine net taxable income in such a way as to avoid the constitutional problems"). Under the guise of "unitary business group," the Department pierces the corporate veil to examine shareholder ownership of affiliated corporations to determine whom it believes is the "employer" under the EETO.

Based on its determination of shareholder ownership, the Department imposes a new obligation on the group of employers deemed to be part of a "unitary business group." That group of employers must now file "a consolidated employer's expense tax return." The corporate plaintiffs correctly point out that nothing in the ordinance that gave rise to the employer's expense tax refers to more than one employer; nor is there a provision in the ordinance that provides for consolidation of affiliated corporations to require the filing of a "consolidated" expense tax return.

Of course, it is likely true that each McDonald's restaurant was incorporated separately, at least in part, to avoid the reach of the EETO. However, when the enabling legislation does not

15

1-09-2272, 1-09-2274 & 1-09-2275, Cons.

address such tax avoidance schemes, the responsibility to correct a perceived problem lies with the Chicago city council; it does not lie with the Department. The Department cannot arrogate the authority to expand the set of employers that are subject to the EETO so that expense taxes are owed that were not owed before.

While it is true the Department's 1997 bulletin does not precisely address the circumstances present in this case, there can be no dispute that of the two examples in the bulletin, example No. 2 most closely resembles the circumstances present in this case:

"Example 2: XYC Corp. and ABC Inc. are affiliated companies. XYC Corp. has 100 employees and is responsible for the work performed by their employees as well as the payment of their wages. ABC Inc. has 150 employees and is responsible for the work performed by their employees as well as the payment of their wages. [XYC] Corp. and ABC Inc. should each file an [Employer's] Expense Tax return because they are two separate entities which control the work performed by their employees and each has control of the payment of their employees wages." May 1997 Information Bulletin.

Under "Example 2," separate corporations are "separate entities" because they each exercise control over their respective employees. There is no suggestion in the 1997 bulletin that the corporate veil regarding "affiliated companies" may be pierced to examine whether one shareholder owns more than 50% of each company, which, in turn, means that that shareholder "controls" the employees of all affiliated corporations so as to qualify the affiliated corporations as functioning as a single "employer," as the Department now argues. There is no suggestion in

16

1-09-2272, 1-09-2274 & 1-09-2275, Cons.

either example that the percentage ownership of a shareholder has any significance in examining whether affiliate corporations may be combined into a single employer.

Nor does the testimony of the Department auditor, the single witness called by the Department at the administrative hearing, lead me to the conclusion reached by the majority that affiliated corporations should be treated as a single employer under the EETO. The written decision of the administrative hearing officer summarizes the auditor's testimony. The auditor testified "he was told [by the Department] to consolidate these businesses due to the common ownership[;] *** no other factors were considered." It is clear that the auditor did not consolidate these businesses because of his own understanding of what the EETO mandated. In fact, as the auditor further demonstrated, the City of Chicago treats each affiliated corporate entity as a distinct entity in other regards. The auditor confirmed that each corporate entity within the "unitary business group" had "its own federal tax ID number." The auditor admitted that each corporation paid separate license fees to the city and that each corporation was considered a taxpayer. According to the auditor, the instructions to the form required to be filed under the EETO "do not contain a reference to the term 'unitary business group'." The term "unitary business group" did not exist in the Department's lexicon before it issued Tax Ruling No. 2. In fact, as the hearing officer noted, "Tax Ruling #2 did not exist when [the auditor] did his assessment." The auditor admitted "that if the entities were not combined there would be no EETO liability and therefore no penalties or interest."

I reject as meaningless the Department's statement that Tax Ruling No. 2 was "intended to clarify rather than change existing law." In an entirely unprecedented manner, the Department

17

1-09-2272, 1-09-2274 & 1-09-2275, Cons.

expanded the definition of "employer" under the EETO in Tax Ruling No. 2 in a transparent effort to capture expense taxes it believes should be paid, though the EETO provides no basis to consolidate affiliated corporate entities into a single "employer."

I respectfully dissent from the contrary decision of my colleagues.